JONAS F. BROWN *vs.* SOPHIE P. MORRILL and others.

March 9, 1891.

Partnership — Mortgage on Firm Property by Survivor and Executors of Deceased Partner, to Correct Former Mortgage. — A clause in the will of a deceased partner construed as authorizing his executors to join with the surviving partner in the execution of a mortgage upon real property of the firm, and also to join with him in a mortgage to correct a mistake of description in a like instrument executed by the testator and his partner in his lifetime, upon firm property.

Same—To what Extent Such Mortgage Relates to Date of Original. Such corrective mortgage, (which fully stated its purpose,) as between

the parties thereto and all persons who had dealt with the property with knowledge of the mistake of description in the original, or who dealt with it after record of the corrective mortgage, related back and constituted a lien as of the date of the original.

Same — Real Property—Parol Evidence to Show Partnership Interest.—Whether real property is partnership assets depends upon the intention and agreement, express or implied, of the partners. This is a matter of inference and evidence, and may be proved by parol testimony, such as the manner in which the members of the firm treated and used the property.

Evidence—Conversation with Deceased Person—Waiver of Objection.—When it appears, upon the examination of a party to an action as a witness, that his testimony relative to conversations with another is incompetent because such person is deceased, the opposite party waives his right to have the evidence struck out by proceeding, without objection or motion, to cross-examine the witness as to such conversations.

Appeal by plaintiff from a judgment of the district court for Hennepin county, where the action was tried by *Rea*, J.

*Little & Nunn* and *Robinson & Baker*, for appellant.

*Kitchel, Cohen & Shaw* for respondents.

COLLINS, J. This was an action to determine an adverse claim to vacant and unoccupied real estate. The pleadings were quite simple, the plaintiff alleging himself to be the owner, which was denied by the defendants Morrill, each of whom, answering separately, asserted title in fee to the premises. The case has been somewhat complicated by the many independent facts which have crept into it, and also by the large number of assignments of error (over 40) which have been set out by the appellant. The salient facts we will proceed to state: In the year 1869, one James A. Lovejoy and the defendants Eunice E. Farnham and Ashley C. Morrill became the owners of block 16, St. Anthony Falls, Hennepin county. These parties were then copartners in the lumber business under the firm name of Farnham & Lovejoy, and this partnership continued until January, 1878, when it dissolved. A new partnership was then entered into, consisting of said Lovejoy and the defendant Sumner W. Farnham, husband of said Eunice E. Farnham, who continued the business under the same firm name until the decease of Mr. Lovejoy, in Jan-

uary, 1886. This real estate was part of the assets of the old firm. On the formation of the new, in 1878, the business and the greater part of the assets held by its predecessor were purchased by it. Mrs. Farnham sold her interest in all of the real property owned by the firm, including her interest in block 16, to her husband. It was intended that she should properly convey her interest in this block to him, and all of the parties to the transaction supposed she had, until a short time prior to the commencement of this action. From the time of the formation of the new firm she never exercised any acts of ownership over the land, paid no taxes, and collected no rents. The new firm used the property, paying the taxes on an undivided two-thirds, until the death of Mr. Lovejoy, and since that time these taxes have been paid by the surviving partner. The new firm and the surviving partner have paid rent to Mr. Morrill for the use of his undivided one-third of the block.

On August 22, 1881, A. C. Morrill and the new firm borrowed of one Chase the sum of $15,000. As security therefor it was agreed between the parties that a mortgage should be executed and delivered upon said block 16, and thereupon the said Ashley C. Morrill and his wife, said Sumner W. Farnham and his wife, Eunice, and said James A. Lovejoy and his wife, made and delivered to said Chase, to secure the payment of said sum of money, a mortgage upon the premises, as was supposed by all concerned, which mortgage was duly recorded on the 13th day of September, 1881. On the 6th day of October following, this mortgage was duly assigned to defendant Sophie P. Morrill, who was and is the wife of defendant A. C. Morrill. Of the money so loaned from Chase one-third was received and retained by A. C. Morrill, and the remaining two-thirds was received by the firm of Farnham & Lovejoy, and used in their business. On February 21, 1884, the same parties borrowed of Mrs. Morrill the further sum of $5,000, and, to secure the payment thereof, Morrill, Farnham, and Lovejoy, with their wives, executed and delivered to her a mortgage upon said premises, which was duly recorded on the 15th day of March following. Of this money two-thirds was received and retained by the firm in their business, the remaining one-third being received by Mr. Morrill. No part of this sum of money was paid,

and on the 30th day of July, 1888, the mortgage was duly foreclosed by advertisement and by sale of the mortgaged premises to Mrs. Morrill, who thereupon received and duly recorded a sheriff's certificate of sale, with the usual and ordinary affidavits in connection therewith.

On the 29th day of January, 1886, James A. Lovejoy died testate. His will was duly probated, the executors therein named, the defendants Young, Merriman, and Howe, duly qualified and yet remain such executors. One paragraph or item only (the ninth) of this will is of consequence here, and that has already been considered in this court in *Mattison* v. *Farnham*, 44 Minn. 95, (46 N. W. Rep. 347.)

On or about the 19th day of October, 1886, it was discovered that a mistake had been made in the description of the premises intended by all parties to have been mortgaged and conveyed to Chase to secure the sum of $15,000, and that instead of describing and conveying, in the mortgage to him of date August 22, 1881, the premises in question, as was intended, a mutual mistake had been made, by means of which there had been mortgaged and conveyed to him an entirely different tract of land, not owned by either of the mortgagors, and in which none of said mortgagors ever had or pretended to have any right, title, or interest. For the purpose of rectifying said mistake and remedying the error in the description, and to secure the loan of money as was originally agreed upon between the parties, said Farnham and wife, said Morrill and wife, and said executors, as such executors, made, executed, and delivered a mortgage upon said block 16 to Sophie P. Morrill of date October 19, 1886, and which was duly recorded on the 26th day of the same month. This mortgage was given to secure the original indebtedness, and contained recitals from which its corrective nature and object were clearly disclosed. No part of the indebtedness was paid, and on the 13th day of August, 1888, this mortgage was foreclosed by advertisement in pursuance of a power of sale therein contained and therewith recorded. The premises were sold at the foreclosure sale to Sophie P. Morrill, to whom the proper officer executed and delivered the usual certificate of sale and affidavits. This sale was regular in form, the evidences thereof were duly recorded, and no redemption

from it has ever been attempted. Another mortgage (upon an undivided two-thirds of these premises) was made September 28, 1886, recorded October 2d, in which Farnham and his wife and the executors were mortgagors, and A. C. Morrill the mortgagee. This has been foreclosed, and the period of redemption has expired, but, as we regard the case, it is not a factor in its determination, and hence we need not discuss its validity.

On July 28, 1889, Lorin K. Lovejoy, a son of James A. Lovejoy, and one of the devisees and legatees named in his will, his wife joining, executed and delivered a mortgage on said block to the plaintiff herein to secure two promissory notes, one made by James A. Lovejoy in his lifetime, the other made by Lorin K. Lovejoy, which mortgage was duly recorded on the 30th of July, 1889. On the same day plaintiff made and duly recorded a notice of his intention to redeem from the foreclosure sale above mentioned, made on the 30th day of July, 1888, and on the next day presented to the proper officer such instruments and documents as were necessary to show his right to redeem from the sale, and paid to said officer the amount due upon the sale of July 30, 1888, whereupon the officer executed and delivered to him a certificate of redemption of the premises from the foreclosure sale, which certificate was in due and regular form, and has been recorded. The money so paid to the officer still remains in his possession. On January 1, 1889, said new firm of Farnham & Lovejoy and the estate of James A. Lovejoy were and ever since have been insolvent. The court also found that at the time of the execution and delivery of the last-named mortgage plaintiff had full notice and knowledge of each of the mortgages herein referred to.

It will be observed at the outset that the plaintiff's claim of title to the premises depends upon the validity of the mortgage which he received from young Lovejoy, devisee and legatee under the will, and upon his redemption of July 31, 1889, from the first foreclosure sale. If his mortgage was valid he had a right to redeem, taking upon himself the possibility that rights secured thereby might be swept away and lost through the foreclosure of date August 13, 1888, and a failure, upon his part, to redeem from that foreclosure in seasonable

time. The respondents deny that the legatee and devisee under the will could legally mortgage any interest in the property, but for the purposes of this case we pass this contention by, and assume that he had the right so to do, and that by reason of his mortgage to plaintiff the latter acquired the rights of a redemptioner under the statute. This being assumed, he duly and legally exercised this right by redeeming from the sale of July 30, 1888, on foreclosure of the mortgage given to Mrs. Morrill February 21, 1884, as before stated.

As we have disregarded the $30,000 mortgage made September 28, 1886, foreclosed July 16, 1888, Mrs. Morrill's claim of title must be deduced, if at all, through the validity and force of the corrective mortgage bearing date October 19, 1886, foreclosed by sale of the premises in question on August 13, 1888, and from which sale the plaintiff made no effort to redeem. If this mortgage was a valid subsisting lien upon the tract of land therein described, relating back by reason of its corrective nature to August 22, 1881, the date of the mortgage with the erroneous description, thus making it a first lien, the plaintiff, having failed to redeem therefrom, has no claim upon or title to the premises. His rights as a subsequent mortgagee have been cut off, and his redemption has proved ineffectual. Had Lovejoy joined in the execution of a corrective instrument in his lifetime, no one would question its effect as a valid subsisting lien from August 22, 1881. As it is, the power of the executors under the terms of the will is necessarily involved, as well as and primarily the finding of the court below to the effect that, when the new firm was organized, Mrs. Farnham sold her interest in this block 16 to her husband, who became a member of the new firm; that she then intended to convey, and supposed she had conveyed, said property to him; that thereafter it was treated and used as partnership property by all of the interested parties, and was a part of the partnership assets of said new firm during its existence. Nearly all of the testimony upon which this finding was based was objected to by plaintiff, and it is advisable to first discuss briefly his claim that the evidence offered by respondents as to the partnership character of the undivided two-thirds of block 16 was immaterial and incompetent under the pleadings. The simple character of the complaint and answer has here-

tofore been adverted to. The complaint was in the usual form in actions of this nature. The defendant Sophie P. Morrill denied, generally, plaintiff's alleged title, pleaded a counterclaim of title in herself, and this counterclaim was put in issue in a general way in plaintiff's reply. To maintain his right to redeem, plaintiff introduced in evidence the last will and testament of the elder Lovejoy, and the mortgage made, executed, and delivered to him by the younger Lovejoy, a legatee and devisee named in the will. In this will was the item before referred to as having been construed in a former case, whereby it was claimed by Mrs. Morrill that the executors were authorized and empowered to execute and deliver the corrective mortgage upon which her title is based. The most that can be claimed for this item is that it dealt with lands belonging to the partnership, and hence the materiality and prime importance of testimony establishing the partnership character of the premises, and that by reason thereof they were affected and controlled by the ninth item or subdivision of the will. The plaintiff claims that, when proving this to have been firm property, defendants were establishing an equitable title, without adequate allegations in their answer, and were not showing a legal title in Mrs. Morrill, under a general denial, or under the counterclaim of title in herself; and in this position is found the fallacy of plaintiff's contention that this testimony was inadmissible and incompetent. It did not tend to show an equitable title in Mrs. Morrill or in any of the persons through whom she derived her interest, but rather the nature of the legal title. Mr. Farnham's equities in an undivided one-third, the legal title remaining in the name of his wife, or the equities of the firm in that third, were not involved, for both Farnham and his wife had joined in the execution of the mortgage. It was not a case where the legal title was in but one of the firm while in fact the property belonged to the partnership. The legal title to an undivided one-third standing in Lovejoy's name, it was competent to show by parol, and under the general denial found in the answer, that this was part of his contribution to the capital stock of the firm, and consequently firm property. Mrs. Morrill's title to this share of the mortgaged premises rested upon the ninth item of the will, an instrument necessarily introduced in evidence by the plaintiff to sus-

tain his own claim of title. If the premises in dispute were subject to and governed by the ninth item, then Lovejoy's interest, held by a legal title when he died, went to Mrs. Morrill upon a foreclosure of her mortgage and the expiration of the statutory period of redemption. She had no equitable claim to the property and made no effort to assert one.

An inspection of the testimony relative to the subject will demonstrate clearly that the undivided two-thirds interest in this property was regarded and treated by Farnham and Lovejoy as partnership property and assets, and that as to all persons interested, including Mrs. Farnham, in whom was the legal title to one-third, it was firm property and assets. Mr. Lovejoy in his lifetime declared it to be such in writing, as well as verbally. Having charge of the books of the firm and its finances, he caused it to be placed among the firm assets, and by appropriate entries brought it into the stock account of both Farnham and himself. The firm paid rent to Mr. Morrill for the use of his one-third, but paid no rent for the use of the remainder. The taxes upon this undivided two-thirds were paid out of the moneys of the firm, as were taxes upon other partnership property. It was repeatedly mortgaged for firm purposes and uses, and after Mr. Lovejoy's death the surviving partner continued to consider and treat it as firm property. It is well settled, in this state and elsewhere, that whether real estate is to be deemed partnership stock or assets depends upon the agreement of the partners, which agreement may be express or implied. The intention of the partners, to be ascertained from their acts or agreements, is to govern, and no express agreement in writing or otherwise is essential, even in cases where the legal title to the firm property is not vested in all of its members, but is in one or more. The fact is necessarily a matter of inference and evidence. *Arnold* v. *Wainwright*, 6 Minn. 241, (358;) *Sherwood* v. *St. Paul & Chicago Ry. Co.*, 21 Minn. 127; Bates, Partn. § 280. It has been well said that it depends mainly on the question whether the property has been brought into the firm as part of the joint stock. *Riedeburg* v. *Schmitt*, 71 Wis. 644, (38 N. W. Rep. 336.) That both Lovejoy and Farnham had brought this property into the firm as part of the joint stock, although the latter had but an equi-

table title, was clearly proved upon the trial. The testimony on this branch of the case has been carefully examined, and we do not discover that the court below erred in its many rulings. The several assignments of error as to these rulings need no special mention.

This brings us to an examination of the ninth item of the will, under which the executors, it is claimed, derived their authority to join in the making and delivery of the corrective mortgage. This item was found in a codicil to the original will, having been substituted for an item bearing the same number, in which the executors, in the briefest manner, were directed to close up the testator's partnership interests and business as soon as practicable after his decease, avoiding unnecessary loss to the estate and damage to his partner. As finally determined upon by the testator it was as follows: "*Item* 9. I hereby authorize, empower, and direct the executors of my will to carry on my copartnership business in which I have been for years and now am engaged with Sumner W. Farnham, under the firm name of Farnham & Lovejoy, for such length of time as to my said executors may seem necessary and expedient, and for the best interests of my estate and my said copartnership business; I hereby giving full and complete authority to my said executors to join with my said copartner in the execution of any and all contracts, deeds, mortgages, leases, releases, notes, bonds, and all other papers and instruments that may become necessary for the proper conduct of said business, for the sale or mortgaging of firm's pine lands and stumpage, for the purpose of borrowing money for said business, and renewing and continuing any firm indebtedness that there may be at my decease, and for doing any and all other acts that may be deemed necessary and advisable by my said executors in and about said copartnership business. And further, in reference thereto, I desire and direct that my said copartnership business shall, by my said executors, be closed up and settled as soon as may be practicable after my decease, they first giving due consideration to my directions in this item contained, and avoiding, as far as may be practicable, all unnecessary loss, damage, or difficulty to my said copartner, to said business, and to my estate." The appellant's counsel contend with much ability that by this clause in the will the executors were em-

powered to execute deeds for and mortgages upon the firm's pine lands only, and that by the broadest construction the operation of the item could not be extended beyond that class of the firm's real property. We do not think that appellant's view of the scope and purpose of this provision in the will needs much consideration. By his original will the testator directed in item 9 that his partnership interests and business be closed out as soon as practicable. He then in a codicil, evidently with great care and deliberation, wholly reconstructed the item, whereby he authorized, empowered, and directed the continuation of the partnership business for such period of time as to his executors seemed expedient. He gave them full and complete authority to join with Mr. Farnham in the execution of any and all contracts, deeds, mortgages, leases, releases, notes, bonds, and all other papers and instruments that might become necessary for the proper conduct of the firm business, and especially such as might be necessary for renewing and continuing firm indebtedness existing at his death. The executors were also enjoined to avoid all unnecessary loss, damage, or difficulty to his partner, to the business, and to the estate. This language was clear and unambiguous so far as firm property, real or personal, was concerned, and conferred upon the executors full power and authority to deed or mortgage, as might be required to properly conduct the business. It is true that in this item the sale and mortgaging of firm pine lands was expressly mentioned, but from this it cannot be assumed, in view of the plenary power conferred on the executors in the same connection, that the testator intended that other real estate belonging to the firm should not be sold or mortgaged. His language expressly negatives such a conclusion.

The next inquiry is as to the circumstances under which the corrective mortgage was made and its contents. The error in the description in the mortgage made to Chase in 1881, and assigned to Mrs. Morrill, was not discovered until about October 1, 1886, and after Mr. Lovejoy's death. The mortgage to Mrs. Morrill, from the foreclosure of which plaintiff redeemed, and the $30,000 mortgage to Mr. Morrill, had intervened of record, but no other liens and no other parties stood in the way of its correction in equity. It was given

to secure firm indebtedness which remained unpaid at the date of Mr. Lovejoy's death. Proceedings were threatened and could have been commenced by Mrs. Morrill to reform, correct, and foreclose the same, and the mortgage in question was executed to avert such proceedings. It would seem that no question ought to be made about the necessity, regularity, or propriety of the steps taken by the executors, whereby they continued the firm indebtedness and avoided loss, damage, and difficulty to the partner and to the trust-estate. This correction was undoubtedly necessary for the proper conduct of the firm business, and, in making the same by means of a new mortgage, the executors were acting strictly within the line authorized and directed by Mr. Lovejoy in item 9 of his last will and testament. While it might have been necessary to make the heirs and devisees of the deceased parties to an action to correct and foreclose the mortgage, it does not follow that they were necessarily proper parties to the new and corrective mortgage. That depended upon the construction of the will.

The corrective mortgage related back to the time of the execution and delivery of the one in which the mutual mistake had been made, and was therefore a first lien upon the premises. It preceded in point of time that given on February 21, 1884, for $5,000, and that of date September 28, 1886, for $30,000, because the mortgagees named in each of these instruments had knowledge of it, consented, and were parties thereto. No one else was interested or injured, and the situation was precisely as if neither of the intervening mortgages had been made or recorded. But the counsel for appellant complains that there was nothing in the notice of foreclosure or in the sheriff's certificate of sale notifying or advising interested parties of the real or retroactive nature of the mortgage itself, or that it purported to convey any rights in the mortgaged premises antecedent to its date. This seems to have been the fact, but the notice of sale and the certificate contained all that was required by the statute regulating foreclosures by advertisement. Full notice of the nature, character, and purpose of the mortgage was given in the instrument itself, and would have been discovered upon examination of its record. The object to be attained by its execution, the purpose in view, the

circumstances and necessity of making.it, were plainly stated, from which it appeared that a mutual mistake in the description of the premises had been made in the instrument it was intended to supersede, that all parties stood ready to correct the error, and that it was executed and delivered for the purpose of avoiding a threatened action against the makers to procure a correction and reformation of the mortgage in which the mistake had been made. The record of this instrument, October 26, 1886, was ample notice of its contents. It also stands admitted that plaintiff had actual knowledge of this mortgage and of its foreclosure when he redeemed. He was therefore fully advised of the claim made by Farnham and the executors in respect to the partnership character of the premises. Again, he not only had knowledge of this special claim, but had previously become a party to it. On June 1, 1888, a tripartite agreement in writing was signed, in which Farnham, as the surviving partner, and the executors, as such, were of the first part, this plaintiff and other creditors of the firm of Farnham & Lovejoy were of the second part, and one Wolford was of the third part, with reference to the transfer by the parties of the first part to the party of the third part of certain real and personal property theretofore belonging to Farnham & Lovejoy, in consideration of which transfer the plaintiff and the other creditors named were to discharge and release certain specified indebtedness of the firm of Farnham & Lovejoy. Scheduled prominently among the real property to be so transferred were the premises in dispute,—the undivided two-thirds of block 16. This agreement was signed by all of the parties thereto, including plaintiff, but for some reason the scheme was abandoned.

Mr. Morrill upon his direct examination testified that he negotiated the loan made from Mr. Chase, and, when doing so, offered security upon block 16. Subsequently, at the beginning of his cross-examination, the witness volunteered the remark that Mr. Chase had since died. Notwithstanding this, counsel for appellant proceeded to cross-examine the witness at length in reference to the conversation in which it was agreed with Mr. Chase that a mortgage should be given upon block 16. After pursuing the cross-examination on this point to his apparent satisfaction, the counsel moved to strike out all state

ments made by the witness respecting the. agreement made, on the ground that they were inadmissible under the statute, the witness being a party to the action, and Mr. Chase being dead. Whatever merit the motion might have possessed had it been seasonably interposed, it is obvious that it came too late. Counsel should have made his objection promptly upon discovering the incompetency of the witness. He could not, knowing the fact, have the benefit of a cross-examination, and also the advantage of the court's refusal to strike out testimony, nearly all of which was elicited by himself.

Judgment affirmed.