Doris RUIZ, Respondent,

v.

1ST FIDELITY LOAN SERVICING, LLC, Appellant.

No. A11–1081.

Supreme Court of Minnesota.

April 17, 2013.

Jonathan L.R. Drewes, Michael J. Wang, Drewes Law, PLLC, Minneapolis, MN, for respondent.

Eric D. Cook, David R. Mortensen, Christina M. Weber, Wilford, Geske & Cook, P.A., Woodbury, MN, for appellant.

Kevin J. Dunlevy, Michael E. Kreun, Beisel & Dunlevy, P.A., Minneapolis, MN, for amici curiae Minnesota Land Title Association, the Minnesota Bankers Association, and the Minnesota Association of Realtors.

John M. Wendland, Christopher K. Loftus, Minnesota Credit Union Network, Saint Paul, MN, for amicus curiae Minnesota Credit Union Network.

OPINION

WRIGHT, Justice.

We consider in this case whether a foreclosure by advertisement initiated by appellant 1st Fidelity Loan Servicing, LLC (1st Fidelity), to collect the debt secured by a mortgage on the home of respondent Doris Ruiz (Ruiz) resulted in a valid foreclosure despite 1st Fidelity's failure to comply with certain statutory requirements. The district court granted summary judgment in favor of 1st Fidelity on the ground that 1st Fidelity had substantially complied with the relevant statutes. The court of appeals reversed and remanded the case to the district court, concluding that Minnesota's foreclosure by advertisement statutes require strict compliance and that a foreclosing party's failure to strictly comply renders the foreclosure void. For the reasons addressed below, we conclude that a party must strictly comply with Minn.Stat. § 580.02(3) (2012), which requires that all assignments of a mortgage be recorded before a party may begin a foreclosure by advertisement. Because 1st Fidelity did not strictly comply with section 580.02(3), we affirm the decision of the court of appeals and remand to the district court for further proceedings.

I.

In 2005, appellant Doris Ruiz executed a promissory note payable to Chase Bank, NA, and a mortgage deed on a duplex located in Minneapolis to secure the indebtedness under the note. The mortgage deed was recorded by the Hennepin County Recorder in August 2005. In May 2006, the original lender, Chase Bank, NA, assigned the mortgage to JP Morgan Chase Bank, NA. This first assignment was recorded in June 2006 by the Hennepin County Recorder. Ruiz defaulted under the terms of the note and mortgage in September 2008. A second assignment of

the mortgage was executed in September 2009. The second assignment, which was recorded in November 2009, listed as the assignee "1st Fidelity," rather than "1st Fidelity Loan Servicing, LLC." In March 2010, 1st Fidelity sent Ruiz a demand letter. When Ruiz did not respond or cure the default, 1st Fidelity commenced proceedings to foreclose the mortgage by advertisement.

A foreclosure by advertisement proceeding involves the publication and recording of various notices. *See* Minn.Stat. ch. 580 (2012). On May 18, 2010, 1st Fidelity published the first notice of foreclosure sale and recorded a notice of pendency of foreclosure. In addition, a third assignment was recorded. "JP Mortgage [sic] Chase Bank, NA" is listed as the assignor and "1st Fidelity Loan Servicing, LLC" is listed as the assignee. The law firm representing 1st Fidelity hand-delivered the third assignment and the notice of pendency to the Hennepin County Recorder on May 14, 2010. But this third assignment and the notice of pendency were not recorded until May 18, 2010.

1st Fidelity served Ruiz with a notice of foreclosure sale and several other notices required by Minn.Stat. § 580.03. Ruiz then served and filed an affidavit of postponement, which postponed the original foreclosure sale date for five months but reduced the redemption period from six months to five weeks. *See* Minn.Stat. § 580.07, subd. 2. 1st Fidelity purchased the property at the foreclosure sale on November 30, 2010. Ruiz failed to redeem the property.

Ruiz subsequently filed a complaint alleging four claims: (1) failure to strictly comply with the assignment recording requirement, Minn.Stat. § 580.02(3); (2) failure to strictly comply with the notice of pendency of foreclosure requirement, Minn.Stat. § 580.032, subd. 3; (3) failure to strictly comply with the pre-foreclosure

counseling notice requirement, Minn.Stat. § 580.021, subd. 2; and (4) wrongful eviction, in violation of Minn.Stat. §§ 557.08–.09 (2012). Ruiz sought both a declaration that the sheriff's sale was null and void and the recovery of monetary damages. Ruiz subsequently amended the complaint to include a quiet-title action, Minn.Stat. § 559.01 (2012).

1st Fidelity moved to dismiss Ruiz's complaint for failure to state a claim on which relief can be granted and, alternatively, for summary judgment. The district court granted 1st Fidelity summary judgment, concluding that the second assignment transferred title to the property to 1st Fidelity before the first publication of the notice of sale, and that there was no genuine issue of material fact as to whether 1st Fidelity provided Ruiz the pre-foreclosure counseling notice. The district court also observed that, under Minn.Stat. § 582.25 (2012) (the Curative Act), a notice of pendency recorded after the date of first publication of the notice of foreclosure sale is an issue "of less concern." Finally, holding that a substantial-compliance standard applies to the statutory requirements at issue, the district court concluded that 1st Fidelity had at least substantially complied with the assignment and notice of pendency provisions.

Ruiz appealed. The court of appeals reversed the decision of the district court, holding that a strict compliance standard applies to Minnesota's foreclosure by advertisement process. *Ruiz v. 1st Fidelity Loan Servicing, LLC*, A11–1081, 2012 WL 762313, at *2–4 (Minn.App. Mar. 12, 2012). The court of appeals concluded that the foreclosure is void because 1st Fidelity failed to strictly comply with the statutes at issue when it recorded the notice of pendency and the third assignment after publishing the notice of sale. *Id.* at *4. In light of its conclusion, the court of appeals

did not address issues related to the pre-foreclosure counseling notice. *Id.* at *5. We granted 1st Fidelity's petition for review.[1]

## II.

■ We review de novo the district court's grant of summary judgment to determine whether genuine issues of material fact exist and whether the district court erred in applying the law. *Stringer v. Minn. Vikings Football Club, LLC,* 705 N.W.2d 746, 754 (Minn.2005); Minn. R. Civ. P. 56.03. Statutory interpretation presents a question of law subject to de novo review. *State v. Bluhm,* 676 N.W.2d 649, 651 (Minn.2004).

■ Foreclosure by advertisement is governed by Minn.Stat. ch. 580. An alternative to foreclosure by action, foreclosure by advertisement was "devised to avoid the delay and expense of judicial proceedings." *Soufal v. Griffith,* 159 Minn. 252, 256, 198 N.W. 807, 809 (1924) (internal quotation marks omitted). Foreclosure by advertisement provides a foreclosing party with a faster and more efficient means to foreclose and allows a party to foreclose in the absence of judicial supervision. *See* 6A Steven J. Kirsch, *Minnesota Practice—Method of Practice* § 49.2 (3d ed.1990). A foreclosing party may foreclose by advertisement pursuant to a power of sale in the mortgage, but the exercise of that power is regulated by statute. *See* Minn.Stat. § 580.01.

We begin our consideration of the issues presented by analyzing whether strict or substantial compliance with Minn.Stat. § 580.02(3) is required. Although 1st Fidelity argues that it strictly complied with this statute, this argument is founded on 1st Fidelity's contention that the statute requires the recording of all assignments of the mortgage before the foreclosure sale, rather than before the initiation of foreclosure by advertisement proceedings.[2] Ruiz contends that strict compliance with foreclosure by advertisement statutes is required, and she maintains that 1st Fidelity failed to strictly comply with the assignment recording requirement, rendering the foreclosure void.[3] In advancing her argument for strict compliance, Ruiz relies on several cases in which we have articulated a strict compliance standard in the context of foreclosures by advertisement. *See, e.g., Jackson v. Mortg. Elec. Registration Sys., Inc.,* 770 N.W.2d 487, 494 (Minn.2009); *Moore v. Carlson,* 112 Minn. 433, 434, 128 N.W. 578, 579 (1910). Because the recording of an assignment of the mortgage is a condition precedent to foreclosure by advertisement, Ruiz argues, it must be completed before a party can initiate the foreclosure by advertisement process.

Alternatively, 1st Fidelity argues that a foreclosing party need only substantially comply with the statutory requirements for foreclosure by advertisement, and a foreclosure is voidable only when a complaining party establishes that she is the

---

1. The court of appeals also reversed the summary judgment in favor of 1st Fidelity on Ruiz's wrongful-eviction claim and remanded that claim to the district court. *Id.* at *5–6. 1st Fidelity did not seek review of this aspect of the court of appeals decision; therefore it is not before us. *In re GlaxoSmithKline PLC,* 699 N.W.2d 749, 757 (Minn.2005) ("Generally, we do not address issues that were not raised in a petition for review.").

2. The parties do not contest that all assignments were recorded more than six months prior to the foreclosure sale.

3. 1st Fidelity asserts that even if the statute requires recordation of all assignments before first publication of the notice of sale, the foreclosure is valid because the third assignment relates back to the second assignment.

intended beneficiary of the protection afforded by the statutory requirements at issue and that the foreclosing party's noncompliance with such requirements is prejudicial. *See, e.g., Willard v. Finnegan,* 42 Minn. 476, 478–79, 44 N.W. 985–86 (1890); *Holmes v. Crummett,* 30 Minn. 23, 25, 13 N.W. 924, 924 (1882). According to 1st Fidelity, section 580.02(3) does not "impose[ ] a precise deadline for accomplishing the recording of all assignments of [a] mortgage." Section 580.02(3), 1st Fidelity maintains, merely requires the recording of all assignments of the mortgage anytime before the sale, rather than requiring all mortgage assignments to be recorded before the foreclosure by advertisement process begins.

## A.

To determine the effectiveness of the foreclosure in this case, the precise language of the statutory provisions governing the foreclosure by advertisement process guides our analysis. We begin by examining the assignment recording requirement in Minn.Stat. § 580.02(3), which provides, in relevant part, "[t]o entitle any party to make such foreclosure, it is requisite ... that the mortgage has been recorded and, if it has been assigned, that all assignments thereof have been recorded...."

 We construe the words and phrases in section 580.02(3) according to their plain and ordinary meaning, with the exception of technical words and phrases, which we construe according to their special meaning. *Staab v. Diocese of St. Cloud,* 813 N.W.2d 68, 72 (Minn.2012) (quoting Minn.Stat. § 645.08 (2012)). In addition, if the words of a law in their application to an existing situation are free from all ambiguity, we will not disregard the letter of the law in order to pursue its spirit. *Premier Bank v. Becker Dev.,*

*LLC,* 785 N.W.2d 753, 759 (Minn.2010) (citation omitted); Minn.Stat. § 645.16 (2012). A statute that is not reasonably susceptible to more than one interpretation is not ambiguous. *City of Saint Paul v. Eldredge,* 800 N.W.2d 643, 647 (Minn. 2011).

Here, the relevant statutory language is unambiguous. Section 580.02 provides that "[t]o entitle any party to make such foreclosure, it is requisite" that certain conditions be met. A foreclosure by advertisement is a foreclosure conducted by a particular means—that is, pursuant to a power of sale clause in a mortgage and pursuant to state statute. *See* Minn.Stat. § 580.01. A "foreclosure" is a "legal proceeding to terminate a mortgagor's interest in property, instituted by the lender (the mortgagee) either to gain title or to force a sale in order to satisfy the unpaid debt secured by the property." *Black's Law Dictionary* 719 (9th ed.2009). The plain meaning of the word "entitle" is "to furnish with a right or claim to something." *American Heritage Dictionary* 597 (4th ed.2000). To "make" means "to cause to exist or happen; bring about." *Id.* at 1056. And "requisite" is defined as "[r]equired; essential." *Id.* at 1482. The plain meaning of the phrase "such foreclosure" as used in section 580.02 unambiguously refers to the foreclosure by advertisement *proceeding* or *process* as a whole, rather than merely the culminating event of the process, such as a sale of the mortgaged property. *Compare* Minn.Stat. § 580.01 (referencing "foreclos[ure] by advertisement" as a process), *with, e.g.,* Minn.Stat. § 580.06 (referencing simply "[t]he sale").

 Thus, the plain meaning of section 580.02(3) requires all assignments of the mortgage to be recorded *before* the mortgagee has the right to engage in the process of foreclosure by advertisement.

Additionally, in light of the statutory language that recording all assignments of the mortgage is "requisite" to make such foreclosure "by advertisement," the statute unambiguously mandates strict compliance. *See* Minn.Stat. §§ 580.01–.02. This interpretation of the statute is consistent with our decision in *Adlinger v. Close,* 161 Minn. 404, 201 N.W. 625 (1925), in which we interpreted the same statutory language at issue here. In *Adlinger,* we rejected the argument that the term "foreclosure" in an earlier version of section 580.02 merely referred to the *sale* of the mortgaged property. *Id.* at 406, 201 N.W. at 626. In doing so, we held that the "requisites called for must exist *when the first step is taken* in the foreclosure. If not, the right to proceed to do what is necessary for a valid sale is suspended." *Id.* (emphasis added).

■ 1st Fidelity's argument that it is entitled to prevail under Minn.Stat. § 582.25(3)(a), a provision of the Curative Act, is unavailing. Section 582.25(3)(a) does not address the circumstances here— namely, an untimely recorded mortgage assignment. Rather, section 582.25(3)(a) provides that a different defect is cured after one year has passed—specifically, "that the notice of sale . . . was published only three, four or five times, or that it was published six times but not for six weeks prior to the date of sale." 1st Fidelity and amici argue that this provision cures the untimely recorded mortgage assignment because the notice was "properly" or "validly" published five times after the assignment was recorded. We disagree. The plain language of section 582.25(3)(a) is directed at addressing specific defects related to publication of the

notice of sale. Those defects do not exist here. There is nothing in the Curative Act that addresses the defect we confront— namely, the untimely recording of an assignment of a mortgage. As such, the Curative Act has no bearing on the "requisite" standard of compliance with the recordation provisions established in section 580.02(3).

### B.

Having concluded that section 580.02(3) requires a foreclosing party to record all assignments of the mortgage before the foreclosing party has the right to begin the foreclosure by advertisement process and that the recording requirement must be strictly complied with, we now determine whether 1st Fidelity strictly complied with the statute. The first notice of sale was published on May 18, 2010. The first and second assignments of the mortgage were recorded in June 2006 and September 2009 respectively, well in advance of the publication. The third assignment was executed on May 3, 2010. But this third assignment was not recorded until May 18, 2010, the same day as the first publication of the notice of sale. As such, the third assignment was not recorded before the beginning of the foreclosure proceeding.[4]

■ 1st Fidelity argues that the recording date of the third assignment should relate back to the recording date of the second assignment of the mortgage, because the third assignment was a "corrective assignment." We are not persuaded. The case on which 1st Fidelity relies to advance this argument held that a corrective mortgage related back to the date

---

4. 1st Fidelity contends that the second and third assignments operated to put title of the mortgage in its name. We assume, without deciding, that this is true. Our decision is based solely on 1st Fidelity's failure to timely

*record* the third assignment. We, therefore, do not address whether errors in the name of the assignee in the second assignment and the assignor in the third assignment defeated the statutory requirement for strict compliance.

of execution and delivery of an earlier mortgage that contained a mutual mistake when "[f]ull notice of the nature, character, and purpose of the [corrective] mortgage was given in the instrument itself, and would have been discovered upon examination of its record." *Brown v. Morrill,* 45 Minn. 483, 493, 48 N.W. 328, 332 (1891).[5] Here, the third assignment does not relate back to the recording of the second assignment. The third assignment does not give notice of its corrective nature, and it fails to mention any earlier assignment to which it might relate. Therefore, the facts here render *Brown* inapposite.

Finally, because we conclude that the foreclosure is void for failure to strictly comply with Minn.Stat. § 580.02(3), which requires all assignments of a mortgage to be recorded before a party is entitled to make a foreclosure by advertisement, we decline to address the parties' other arguments, including those regarding compliance with the notice of pendency requirement in Minn.Stat. § 580.032, subd. 3, and the pre-foreclosure counseling notice requirement in Minn.Stat. § 580.021, subd. 2.

In light of our decision that the foreclosure is void for failure to strictly comply with Minn.Stat. § 580.02(3), we remand to the district court for further proceedings on Ruiz's wrongful-eviction claim. *See supra* n. 1.

Affirmed.

---

**5.** 1st Fidelity also cites Title Standard No. 58 to support its relation-back argument. But 1st Fidelity omits language in the Title Standard that reflects our holding in *Brown. See* Minnesota State Bar Ass'n, *Minnesota Standards for Title Examinations,* No. 58 (as amended June 21, 1996) ("Where a mortgage has been recorded to correct a defect in a previously recorded mortgage, *and it contains a statement to that effect,* an assignment, a satisfaction or release which describes only one of the mortgages is sufficient.") (emphasis added). In light of our analysis of *Brown's* inapplicability here, we need not separately address Title Standard No. 58.