*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0552**

Valerie R. LeMaster,
Appellant,

vs.

Green Tree Servicing, LLC
fka Green Tree Financial Servicing,
Respondent.

**Filed December 28, 2015
Affirmed
Minge, Judge**∗

Dakota County District Court
File No. 19HA-CV-14-2658

Valerie R. LeMaster, Inver Grove Heights, Minnesota (pro se appellant)

Melanie Full, Katherine Devlaminck, Shubha M. Harris, Stinson Leonard Street LLP, Minneapolis, Minnesota (for respondent)

Considered and decided by Connolly, Presiding Judge; Smith, Judge; and Minge, Judge.

---

∗ Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**MINGE**, Judge

Appellant borrower challenges the district court's summary judgment in favor of respondent mortgage servicer, arguing that she demonstrated the existence of material factual issues on her claims that respondent violated Minn. Stat. §§ 58.13 and 582.043 (2014). She also challenges the district court's denial of the motion to amend her complaint to seek punitive damages. We affirm.

## FACTS

In 2007, appellant Valerie LeMaster financed her home with a mortgage-secured loan from Countrywide Home Loans Inc. The loan was assigned to Bank of America N.A. for servicing. After she failed to make certain loan payments in 2010, she entered into a loan-modification agreement with Bank of America. In February 2013, LeMaster was in default on the modified loan, and Bank of America sent her a notice of intent to accelerate and foreclose the mortgage. LeMaster made a partial payment, but was informed that the payment was less than required for reinstatement.

As of May 1, 2013, Bank of America transferred servicing of the mortgage to respondent Green Tree Servicing LLC. Evidence was submitted that in April 2013, Bank of America and Green Tree each sent LeMaster a letter at her home address notifying her of this change. On May 23, Green Tree sent her a notice of default, stating that she could cure by submitting the total amount due, $2,985.62, or completing a modification or repayment agreement through Green Tree. LeMaster stated in her deposition that she may have received the letters, but thought that it was a scam because she had never heard of

Green Tree and had sent April and May mortgage payments to Bank of America. On June 3, Green Tree sent LeMaster another letter stating that her mortgage payment was 60 days past due and that her loan may be referred for foreclosure. LeMaster received the letter, but shredded it as junk mail. On June 6, Green Tree sent LeMaster another notice requesting that she contact Green Tree immediately to determine her eligibility for a mortgage modification.

On June 17, LeMaster's neighbor told her that her mortgage company was trying to reach her, but it was not Bank of America. LeMaster called Green Tree and Bank of America and was informed that Green Tree was now servicing her mortgage. After she spoke to Bank of America, Bank of America returned her April and May checks, but she made no payments to Green Tree. LeMaster and Green Tree both allege that they unsuccessfully tried to reach the other by phone.

In July 2013, Fannie Mae contacted LeMaster to offer mortgage assistance and provided her with a Uniform Borrower Assistance Form. LeMaster testified in her deposition that she filled out the form, but because she "was still trying to get [the mortgage] reinstated[, she] didn't need a modification" and did not send it.

Also in July 2013, Green Tree's local counsel sent LeMaster letters informing her that her mortgage had been forwarded for foreclosure purposes and offering to connect her with foreclosure-prevention counseling. In August, Green Tree sent her another letter, stating that she was approved for a trial-period plan to modify her mortgage, that her mortgage was "seriously delinquent," and that she was required to contact Green Tree within two weeks to accept the offer and stop the foreclosure process. LeMaster testified

that she did not respond to any of these overtures because she believed that she would still get a reinstatement amount, and there would be no further problems.

In October, Green Tree notified LeMaster that she was no longer eligible for mortgage assistance, that she was required to make the full payment due, and to call if she wished to receive a reinstatement amount. She stated that she continued to attempt to call Green Tree but would be placed on hold.

On October 11, Green Tree's local counsel prepared a notice of pendency of a mortgage-foreclosure proceeding by advertisement and power of attorney to foreclose LeMaster's mortgage. Starting November 7, 2013, and continuing for a period of six weeks, counsel published notice of the foreclosure sale, with a stated sale date of January 7, 2014.

On November 8, Green Tree offered LeMaster another mortgage modification and trial period payment plan. Again, it informed LeMaster that if she did not accept the plan, the foreclosure process would continue. The same day, Green Tree sent LeMaster a notice stating that the foreclosure sale was "postpon[ed]" until March 7, 2014, "to provide time to evaluate your account for loss mitigation assistance." LeMaster did not respond, made no further payments on her mortgage, and never corresponded with Green Tree regarding the status of the mortgage or the underlying loan. On November 20, she was served with a notice of foreclosure sale, setting forth the sale date as being January 7, 2014.

On December 9, Green Tree sent LeMaster another notice, stating that her foreclosure sale was "postpon[ed]" until January 7, 2014, "to provide time to evaluate your account for loss mitigation assistance." She stated in an affidavit that the next day, she

4

called Green Tree's counsel to request reinstatement figures and clarify the date of the sheriff's sale. She stated her belief, based on a conversation with a paralegal, that the sale would be held on March 7, and she still had time to submit a loan modification, along with seeking reinstatement. The paralegal, however, stated in an affidavit that she told LeMaster that the firm did not negotiate with borrowers on loss mitigation options; that she should contact Green Tree directly; and that the sale was still scheduled for January 7.

The paralegal alleges that on December 13, she sent LeMaster a letter reciting a reinstatement amount of $15,617.79. A January 6, 2014, letter from Green Tree to LeMaster stated that reinstatement was still a viable option. LeMaster's home was sold at a sheriff's sale on January 7. LeMaster did not attend.

LeMaster called Green Tree's counsel again in January asking for a reinstatement figure, but was told that the foreclosure sale had been held and that her home had been sold. In March, she reached counsel by phone and was given a letter with redemption figures and a copy of the December 13 letter with reinstatement figures. She alleges that this was the first time since May 23, 2013, that she saw a written document with a reinstatement amount and agrees that she was told that at this time redemption was her only remaining option. She did not redeem the property.

In July 2014, LeMaster filed this action, alleging false, deceptive, or misleading communications in connection with a residential loan transaction, in violation of Minn. Stat. § 58.13, and failure to halt the foreclosure sale to evaluate her loan for modification, in violation of Minn. Stat. § 582.043. She sought damages and a declaration that the sheriff's sale was void. Green Tree moved for summary judgment. After a hearing, the

5

district court granted summary judgment, concluding that LeMaster had failed to raise any genuine issues of material fact regarding her claims. The district court denied as moot LeMaster's motion to amend the complaint to seek punitive damages. This appeal follows.

## D E C I S I O N

On appeal from summary judgment, this court reviews de novo whether any genuine issues of material fact exist and whether the district court erred in applying the law. *Ruiz v. 1st Fid. Loan Servicing, LLC*, 829 N.W.2d 53, 56 (Minn. 2013). No genuine issue of material fact exists when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *DLH, Inc. v. Russ*, 566 N.W.2d 60, 69 (Minn. 1997) (quotation omitted). We view the evidence in the light most favorable to the party against whom summary judgment is granted. *STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 76-77 (Minn. 2002). If there are no genuine disputes about any material facts and one party is entitled to judgment as a matter of law, summary judgment must be granted. Minn. R. Civ. P. 56.03. "[Appellate courts] may affirm a grant of summary judgment if it can be sustained on any grounds." *Doe v. Archdiocese of St. Paul*, 817 N.W.2d 150, 163 (Minn. 2012).

LeMaster argues that the district court erred by granting summary judgment in favor of Green Tree on her claims alleging violations of Minn. Stat. § 58.13 and Minn. Stat. § 582.043. We address these arguments in turn.

**Minn. Stat. § 58.13**

LeMaster argues that she presented sufficient evidence to create a material factual issue regarding Green Tree's violation of Minn. Stat. § 58.13, subd. 1(a)(9). That statute

6

provides that a residential mortgage originator or servicer shall not "make or cause to be made, directly or indirectly, any false, deceptive, or misleading statement or representation in connection with a residential loan transaction." Minn. Stat. § 58.13, subd. 1(a)(9).[1] LeMaster alleges that Green Tree violated this statute by: (a) providing confusing information to her about the possible postponement of the foreclosure sale of her property; (b) sending incomplete information about a loan modification; and (c) failing to provide reinstatement figures for her existing mortgage.

The district court concluded that, as a matter of law, Green Tree did not violate Minn. Stat. § 58.13 with respect to the postponement notices because they were not made "in connection with a residential loan transaction." *See id*. But the district court noted that, even if the statute were assumed to apply, LeMaster failed to present an issue of material fact as to whether they violated Minn. Stat. § 58.13.

Whether LeMaster's claims lie within the scope of Minn. Stat. § 58.13, subd. 1(a)(9), presents a question of statutory interpretation, which this court reviews de novo. *Finn v. All. Bank*, 860 N.W.2d 638, 644 (Minn. 2015). "The goal of statutory interpretation is to effectuate the intent of the Legislature." *Staab v. Diocese of St. Cloud*, 853 N.W.2d 713, 716 (Minn. 2014). If a statute is clear and unambiguous, we apply its

---

[1] LeMaster also argued before the district court that Green Tree violated Minn. Stat. § 58.13, subd. 1(a)(5), which prohibits a mortgage originator or servicer from failing to conform to its written agreements with borrowers and others. The district court rejected this argument, and LeMaster is not asserting it on appeal. *See State Dep't of Labor & Indus. by Special Comp. Fund v. Wintz Parcel Drivers, Inc.*, 558 N.W.2d 480, 480 (Minn. 1997) (declining to consider issue in absence of adequate briefing on appeal).

plain and ordinary meaning. *A.A.A. v. Minn. Dep't of Human Servs.*, 832 N.W.2d 816, 819 (Minn. 2013). But if it is ambiguous, we may look beyond the statutory language to determine legislative intent. *Id.* "A statute is ambiguous if, as applied to the facts of the case, it is susceptible to more than one reasonable interpretation." *Id.*

The phrase "residential loan transaction," is not defined in Minn. Stat. § 58.13. However, a "transaction" has been defined as "[t]he act or an instance of conducting business or other dealings; esp., the formation, performance, or discharge of a contract." *Black's Law Dictionary* 1535 (8th ed. 1999). It appears clear that communications and agreements related to defaults on residential loans and reinstatement and modification agreements related to residential loans are "transactions." Here they are part of LeMaster's continuing obligation under her mortgage loan. We conclude that by its plain language, Minn. Stat. § 58.13 applies to Green Tree's notices concerning the status of the foreclosure sale because the notices were issued "in connection with a residential loan transaction." Further, even if we were to determine that the statute was ambiguous, and thus susceptible to statutory construction, we note that Minn. Stat. § 58.13 is a consumer-protection statute, which is remedial in nature and liberally construed in favor of protecting consumers. *See Liabo v. Wayzata Nissan, LLC*, 707 N.W.2d 715, 724 (Minn. App. 2006) (stating that principle), *review denied* (Minn. Mar. 28, 2006).

Nonetheless, we agree with the district court that LeMaster failed to present a genuine issue of material fact sufficient to defeat the motion for summary judgment. Green Tree provided LeMaster with three types of written notices regarding the foreclosure-sale date. The first was a letter stating that the sale had been "postpon[ed]" until March 7, 2014.

8

The second was the official notice, personally served on LeMaster, which specified the correct foreclosure-sale date of January 7, 2014, and controls as to the date of the sale. *See* Minn. Stat. § 580.03 (2014) (stating requirement for service of notice of foreclosure on person in possession of mortgaged premises as prerequisite for foreclosure). Although the third written notice used the term "postponed," it stated the correct foreclosure-sale date of January 7. At the same time, legal notices were published several times with the correct date of January 7. We cannot conclude that LeMaster's receipt of an initial incorrect foreclosure-sale notice is sufficient to withstand summary judgment on her claim alleging false or misleading statements when Green Tree promptly corrected the erroneous information and personally served her with and published a correct notice.[2]

LeMaster alleges that Green Tree's offers of an opportunity for loan modification were deceptive or misleading because they did not contain the amount being financed, fees, or separate designations for principal, interest, and escrow. She argues that because of this incomplete information, she did not wish to commit to the proposed agreements. But it is undisputed that she never attempted to pursue or to accept Green Tree's offers. She never

---

[2] For the first time on appeal, LeMaster argues that Green Tree's notice with an incorrect foreclosure-sale date did not comply with the statutory requirements for a mortgagee to postpone a foreclosure sale under Minn. Stat. § 580.07, subd. 1 (2014). This court generally declines to address issues not presented to and addressed by the district court. *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988). Even if we were to address this argument, we note that "[a] plain reading of [Minn. Stat. § 580.07] indicates that notice of postponement is only required when a foreclosure sale actually is postponed by the mortgagee." *Brisbin v. Aurora Loan Servs., LLC*, 679 F.3d 748, 751 (8th Cir. 2012). Here, LeMaster was properly served with notice of the correct foreclosure-sale date under Minn. Stat. § 580.03, and no postponement of the foreclosure sale occurred.

applied for a loan modification. She never took sufficient action to create a basis for a claim. She cannot show any damages resulting from information Green Tree included, or failed to include, in its loan-modification offers. *See* Minn. Stat. § 58.18, subd. 1 (2014) (providing for an award of damages for parties injured by section-58.13 violations).

LeMaster additionally argues that a genuine issue of material fact exists regarding a section-58.13 violation because Green Tree failed to provide her with a reinstatement amount for her current loan. She maintains that although she repeatedly requested reinstatement figures, the evidence does not show that she received them in a timely manner. But the record shows that as early as May 2013, Green Tree sent LeMaster a notice informing her of default under her existing loan, with the amount required to cure that default. And LeMaster does not contest that while she was investigating reinstatement, she failed to submit any payments to Green Tree to cure her default or otherwise correspond with Green Tree in writing. We conclude that under these circumstances, LeMaster has failed to produce evidence creating an actionable claim under section 58.13 regarding her requests for reinstatement figures. *See id.*

**Minn. Stat. § 582.043**

LeMaster argues that the district court erred by concluding that she did not make a prima facie showing that Green Tree violated Minn. Stat. § 582.043, subd. 5(2), by failing to provide her with a reinstatement quote. Under that statute,

> [a] servicer must . . . after receiving a request for a loan modification or other loss mitigation option, exercise reasonable diligence in obtaining documents and information from the mortgagor to complete a loss mitigation application, facilitate the submission and review of loss mitigation

10

> applications, and give the mortgagor a reasonable amount of time to provide the required documents[.]

Minn. Stat. § 582.043, subd. 5(2). A "loss mitigation option" means "a temporary or permanent loan modification, a forbearance agreement, a repayment agreement, a principal reduction, capitalizing arrears, or any other relief intended to allow a mortgagor to retain ownership of the property." *Id*., subd. 1(c).

LeMaster argues that an issue of material fact exists concerning whether Green Tree received her requests for reinstatement figures, triggering its obligations under Minn. Stat. § 582.043, subd. 5(2). The district court concluded that no material factual issue existed on that claim because Green Tree's counsel complied with the statutory obligation by sending current reinstatement figures to LeMaster at her address by U.S. Mail on December 13, 2013.

Under Minnesota law, "mail properly addressed and sent with postage prepaid" is presumed "duly received by the addressee." *Nafstad v. Merchant*, 303 Minn. 569, 570, 228 N.W.2d 548, 550 (1975). But when the alleged addressee denies receiving the mail, the burden shifts to the alleged sender to prove mailing by a fair preponderance of the evidence. *Id.* at 571, 228 N.W.2d at 550. We agree with LeMaster that by requesting a reinstatement amount, she was requesting a "loss mitigation option" under the statute. *See* Minn. Stat. § 582.043, subd. 1(c). And even though a presumption exists that she received reinstatement figures from Green Tree's counsel in December 2013, her testimony denying that she received them in a timely manner is sufficient to create a factual dispute on that issue. *See Nafstad*, 303 Minn. at 571, 228 N.W.2d at 550.

11

As Green Tree notes, however, after notifying a mortgagor of an applicable loss mitigation option, a mortgagee's statutory obligation with respect to that option consists of exercising reasonable diligence in obtaining documents and information from the mortgagor in connection with "the timely receipt of a loss mitigation application," and offering the mortgagor the loss mitigation option "after review of the loss mitigation application." Minn. Stat. § 582.043, subd. 5 (2)-(4). A "loss mitigation application" differs from a "loss mitigation option" in that it requires documents and information be submitted to the servicer for review. *See id.*, subd. 5(2), (3). It is undisputed that LeMaster did not submit any information or a loss mitigation application to Green Tree. Because Green Tree had not received a loss mitigation application from LeMaster, it had no obligation under Minn. Stat. § 582.043, subd. 5, to review such an application and evaluate her loan for relief. The record is therefore not sufficient to create a triable issue on whether Green Tree violated Minn. Stat. § 582.043, subd. 5.

Similarly, we reject LeMaster's claim under Minn. Stat. § 582.043, subd. 6(c), which requires a servicer to halt a foreclosure sale "[i]f the servicer receives a loss mitigation application after the foreclosure sale has been scheduled, but before midnight of the seventh business day prior to the foreclosure sale date." LeMaster argues that the district court's summary-judgment order failed to recognize her statutory right to submit a loss mitigation package up to seven days before the foreclosure sale. But the statute's plain language provides that this borrower protection only applies "[i]f the servicer receives a loss mitigation application," *id.*, and the district court correctly noted that LeMaster did not

submit a loss mitigation application to Green Tree.  Therefore, relief under subdivision 6(c) is unavailable to her.[3]

Because we affirm the district court's summary judgment, we decline to consider as moot LeMaster's argument that the district court abused its discretion by denying her request to amend the complaint to allege punitive damages.

**Affirmed.**

---

[3] The district court declined to address Green Tree's letter argument, submitted after the summary-judgment hearing, that LeMaster lacks a private right of action for a section-58.13 violation because her mortgage originated with Countrywide Home Loans, a residential lending unit of Countrywide Bank, N.A., a federal savings bank operating under a federal savings bank charter.  *See* Minn. Stat. § 58.18, subd. 4 (stating that a private right of action under Minn. Stat. § 58.13 is not available in connection with a "residential mortgage loan originated by a federal or state chartered bank, savings bank, or credit union").  In a related argument, Green Tree argues for the first time on appeal that LeMaster's claim under Minn. Stat. § 58.13 is preempted by the National Bank Act.  *See* 12 U.S.C. § 25b(b)(1)(A)-(C) (2012).  Because we affirm summary judgment on issues timely presented to and considered by the district court, we do not consider these arguments.  *See  Thiele*, 425 N.W.2d at 582; *In re Block*, 727 N.W.2d 166, 175 (Minn. App. 2007) (declining to address preemption issue when it was not considered by the district court and raised for the first time in a reply brief).