ANNA CATHERINE PHELPS v. WESTERN REALTY COMPANY and Others.[1]

May 22, 1903.

Nos. 13,387—(65).[2]

### Mortgage—Sale Under Power.

A sale under a power in a mortgage in gross, as one parcel, of several distinct tracts of land, is not void, but voidable only for good cause shown, and the rule is not changed by the fact that part of the tracts constitute the homestead.

### Contract—Pleading.

Certain contracts executed between the assignee of the purchaser at a mortgage sale and the mortgagor examined, and *held* to constitute con—

[1] CARRINGTON PHELPS v. WESTERN REALTY COMPANY and Others.

May 22, 1903.

Nos. 13,386—(64).

*Carrington Phelps*, pro se.
*Snyder & Gale*, for respondents.

PER CURIAM.

The demurrer to the complaint in this action was sustained upon the ground that it did not state facts sufficient to constitute a cause of action. The facts set forth in the complaint are practically the same as those in Phelps v. Western Realty Co.; and for the reasons therein stated the order is affirmed.

[2] Reported in 94 N. W. 1085, 1135.

tracts of sale by such assignee to the mortgagor, confirming the mortgage sale and the title in the assignee based thereon. *Held*, the allegations of the complaint are not sufficient to constitute a cause of action to set aside the contracts upon the ground that the real agreement was an extension or renewal of the mortgage, and not one of sale and purchase.

**Res Judicata.**

Plaintiff is bound by the judgment entered in a prior action, involving the same subject-matter, wherein the same contracts were considered and construed.

**Relief from Judgment.**

The proper remedy to obtain relief from such prior judgment is by motion under G. S. 1894, § 5267, and not by equitable action.

Appeal by plaintiff from an order of the district court for Hennepin county, Brooks, J., sustaining a general demurrer to the complaint. Affirmed.

*Carrington Phelps*, for appellant.

*Snyder & Gale*, for respondents.

LEWIS, J.

Briefly stated, the complaint in this action sets forth that on March 30, 1893, plaintiff and her husband, Carrington Phelps, gave to the St. Paul & Minneapolis Trust Company a mortgage of $16,000, due three years from date, with interest at eight per cent., upon certain property located upon an island in Lake Minnetonka, Hennepin county, consisting altogether of about four hundred acres, eighty of which was occupied as a family homestead. The mortgage was assigned to the Chestnut Street Trust & Savings Fund Company of Philadelphia, and the assignee foreclosed the mortgage under the power therein contained, and on June 8, 1896, bid in the property for the sum of $17,689.29. Prior to the sale, plaintiff's husband demanded in writing from the sheriff who made the sale, and from the attorney, that the several tracts of land covered by the mortgage be sold separately, in order that the homestead might be fully protected, but the demand was ignored and the property was sold in one tract. On June 18, 1898, the sheriff's certificate was assigned to the Western Realty Company, respondent. Before the time for redemption from the foreclosure

sale expired, plaintiff's husband instituted suit against the Chestnut Street Trust & Savings Fund Company to set aside and have the sale declared null and void upon the ground that it was illegal; the land not having been sold in separate tracts, as demanded.

During the pendency of such action, and after the sheriff's certificate had been assigned to respondent Western Realty Company, it entered into an agreement with plaintiff's husband, Carrington Phelps, known as "Exhibit A." This agreement, in effect, provided that upon its execution the Western Realty Company should take judgment as prayed for in the answer on file in the action brought by Carrington Phelps to annul the sale as above stated, and that such company would execute to Carrington Phelps, or some one designated by him, a contract of sale of all of the lands described in the sheriff's certificate, agreeing to convey by warranty deed all of the lands at any time within five years from the date of the instrument upon being paid the sum of the full amount due, according to the terms of the certificate of sale, with interest at the rate of six per cent. per annum, and in such contract of sale agreed at any time prior to default in the conditions of the contract to convey to Carrington Phelps, or any one designated by him, shore frontage, with certain exceptions, to a depth of three hundred feet from the shore line of Lake Minnetonka, at two dollars per front foot, with accrued interest, and also to convey certain property mentioned at the rate of $300 per acre, and any number of acres inside of the three hundred-foot limit, being a part of the homestead, at $50 per acre, and agreed to accept one-half of the principal amount in cash, and the other half in purchase-price mortgage on the tract sold and released; that, by such contract to be entered into, Carrington Phelps was to pay all the taxes for the year 1898 and subsequent years, and that, upon default in payment of the same, the second party should have the right to declare the contract forfeited, and take proper legal steps for its cancellation, there being a provision that the timber should not be cut. It was also agreed that the Western Realty Company should pay all taxes then unpaid and outstanding, and that the amount so paid, together with two certain judg-

ments, amounting to about $2,700, should be placed in a promissory note, signed by Mr. Phelps, made payable on or before five years, at six per cent. interest, to be secured by a first mortgage, signed by plaintiff and her husband, upon certain other property on the same island. It was also agreed that whenever payments under such contract or mortgage should be made, equal to the principal sum, including interest, the realty company should execute a warranty deed of all the premises.

The complaint alleges that, in pursuance of this contract, Mr. Phelps designated Carrington Arah Phelps, of Litchfield, Connecticut, as the person with whom the contract of sale was to be executed, and a contract (Exhibit B) was thereupon entered into between the Western Realty Company and Carrington Arah Phelps, which embodied substantially all of the provisions set forth in the contract Exhibit A. The complaint further states that, as provided in Exhibit A, judgment was entered on October 1, 1898, in the pending suit; that exhibits A and B constitute an extension of the original mortgage; and that the total amount provided in Exhibit B, $20,516.64, was the amount agreed upon by the parties as due on such mortgage on July 28, 1898. It is then alleged that plaintiff knew of the bringing of the action by her husband to set aside the foreclosure sale, and of the negotiations and agreements following in respect to Exhibits A and B, and always relied upon such agreements as being an extension of the original mortgage.

The complaint then states that on August 16, 1899, the Western Realty Company served on the plaintiff and her husband a notice, in writing, of the cancellation of Exhibit B, and that about the same time such company began an action in the district court of Hennepin county against the plaintiff and her husband and Carrington Arah Phelps for the purpose of cancelling the agreement and terminating all rights thereunder; that in such action Mr. Flandrau, of St. Paul, was retained and appeared as counsel for defendants, and served answers therein, and that before the cause was reached for trial a stipulation was entered into between the attorneys of the respective parties, known as "Exhibit C," wherein

it was stipulated that there was then due (October 28, 1899) upon the contract Exhibit B the sum of $20,514.64, with interest from July 28, 1898, in which to pay that sum of money and the amount of taxes, if any, paid by the realty company for 1899, and if defendants should pay or cause to be paid such sums on or before January 31, 1901, then the action to be dismissed, and the plaintiff deed the premises described in the contract, and that if defendants should not pay or cause to be paid such money by January 31, 1901, then plaintiff might, without any notice whatever to defendants or their attorney, make application to the court for an order and decree for judgment.

It is alleged that the plaintiff, on account of illness, was absent from the state for the greater part of the year 1899–1900, and had no knowledge of such stipulation (Exhibit C) until about April 15, 1902, and it is also alleged that subsequent to the execution of Exhibit C, but before judgment was entered thereon, it was agreed that the Western Realty Company would, within the time specified in the stipulation, accept partial payments and release from time to time such portions of the premises as might be sold, and that, in pursuance of such agreements, Carrington Phelps devoted considerable time to arranging for the sale of the property; that thereafter, and on February 6, 1901, upon application of the realty company's attorney, judgment was entered in accordance with the stipulation, wherein it was adjudged and decreed that the Western Realty Company was the owner in fee simple of all the lands mentioned in the complaint, and had title to the immediate possession thereof, and that defendants in that action had no right, title, or interest therein, and that the agreements Exhibits A and B be cancelled. The complaint further states that the plaintiff was not advised of the entry of such judgment until the month of July, 1901; that thereafter an appeal was taken to the supreme court from such judgment, but that, owing to the mistake of defendant's attorney in that action, the answer was not filed; and that the issues were submitted to the supreme court upon a wrong theory of the case; and it is then alleged that plaintiff did not know of such fact until the middle of May, 1902; that the supreme court affirmed the judgment in such action on April 25, 1902.

The conclusion insisted upon by appellant from the foregoing statement of facts is that the stipulation Exhibit C, the order of judgment, and judgment entered thereupon, should be set aside, and that appellant be permitted to answer in such action; that the agreements Exhibits A and B be declared to constitute an extension of the original mortgage; and that the only interest which the Western Realty Company has in the property is as a mortgagee, and relief is demanded by way of an accounting and injunction. To this complaint respondents demurred upon the ground that it did not state facts sufficient to constitute a cause of action, and, the court having sustained the demurrer, the case is brought here by appeal from the order denying a new trial.

1. A sale, under a power in a mortgage, in gross, as one parcel, of several separate and distinct tracts of land, is not void, but voidable only for good cause shown, and for fraud or prejudice resulting to the mortgagor or owner of the equity of redemption. Willard v. Finnegan, 42 Minn. 476, 44 N. W. 985; Clark v. Kraker, 51 Minn. 444, 53 N. W. 706. The fact that a part of the lots consti- tuted a homestead would not change the rule. It would be neces- sary for the party attacking the sale upon such ground to show that, if the land had been offered separately, the debt would have been satisfied without resorting to the homestead, or he would have to show fraud or facts constituting prejudice upon some other ground.

It follows, therefore, that the foreclosure sale was prima facie valid, and title passed to the purchaser, and through it to the Western Realty Company; and when Mr. Phelps began the action to set aside the sale upon the ground that the land had not been separately sold, in order to avoid the sale he assumed the burden of proving the facts necessary within the rule. Exhibit A express- ly authorized the Western Realty Company to enter judgment in that action, and judgment was so entered, whereby title was con- firmed in it, and the action was brought to a determination adverse to the contention of plaintiff. The contract Exhibit B, made in pursuance of Exhibit A, is purely and simply a contract of sale and purchase, based upon and confirming title in the Western

Realty Company; and, while the real contract may not have been expressed in the writings, there is not a phrase or provision in the instruments which can be construed to support appellant's theory that in effect they provide an extension of the mortgage and the time to redeem. On the contrary, the language of the contracts conclusively shows that it was the purpose to treat the sale as valid, the title transferred, and to enter into an absolutely new contract of purchase. This manifest construction is not changed or affected by the fact that it is alleged that it was the intention of the parties to treat the contracts as a renewal or extension of the mortgage. This is a mere conclusion. In order to overcome the clear meaning of the contracts, and establish an entirely different agreement than appears upon their face, clear, distinct, and positive facts should be alleged to show that the writings did not express the will of the parties.

2. Exhibit B provided that the purchaser might have on or before five years from the date of the instrument to pay the amount of the purchase price, and it appears from the case of the Western Realty Company v. Phelps, 86 Minn. 52, 90 N. W. 11, that this contract was cancelled by the service of the notice required by Laws 1897, p. 431 (c. 223); and it also appears from that case that judgment was entered in pursuance of the stipulation Exhibit C. The validity of that stipulation and Exhibit B is there sustained, and appellant is bound by the result of that action, unless it appears from the complaint that she had no notice of those proceedings, and they were taken without her knowledge, and without authority by the attorney who appeared for her.

In this respect we think the allegations of the complaint are insufficient. In the first place, appellant was a party defendant in that cause; and inasmuch as the action attacking the validity of the mortgage sale was brought by her husband, in view of the length of time that lapsed, it would require very strong statements to relieve appellant from the effect of the litigation which was being carried on, since it appears that the litigation was being conducted with her knowledge and for her benefit, and that she accepted the results thereof, and also the benefit accruing by

reason of the length of time gained by the execution of the contracts Exhibits A, B, and C. The only statements we find in the complaint upon this subject are that she did not until April 15, 1902, know of the existence of the stipulation Exhibit C, and that she was not advised until July, 1901, that the judgment of February 6, 1901, had been entered, and that she did not know until the middle of May, 1902, that upon the appeal to the supreme court of the case of Western Realty Company v. Phelps the answer therein had been omitted from the paper book. In explanation of this want of knowledge, it is alleged that on account of illness she was absent from the state a considerable time. But appellant knew the mortgage had been foreclosed, that the contracts of purchase had been executed, and that whatever rights she had under the mortgage must be determined by subsequent transactions with reference to the conduct of the parties under those contracts, or possible litigation in connection therewith. She has had the benefit of the contract to repurchase, and the additional time to pay the amount due under Exhibit C, yet took no steps to obtain relief from the judgment entered pursuant to Exhibit C until about July 1, 1902; and it was then too late, upon the grounds stated, to ask relief from a court of equity.

3. But if it were possible by the most liberal construction to spell out a cause of action, it is evident plaintiff has mistaken her remedy. This action is brought to set aside the former judgment, and for leave to set up a proper defense therein. Relief should have been sought under G. S. 1894, § 5267, by motion in that action.

For the reasons stated, the order of the trial court must be affirmed, and it is unnecessary to refer to the other propositions discussed upon the argument.

Order affirmed.