Margaret Ann HUNTER, Appellant,

v.

ANCHOR BANK, N.A., Respondent,

Emigrant Mortgage Company, Inc., Respondent.

No. A13–0515.

Court of Appeals of Minnesota.

Dec. 23, 2013.

Review Denied March 18, 2014.

Ryan R. Dreyer, Eric G. Nasstrom, Morrison Sund PLLC, Minnetonka, MN, for appellant.

Kristine K. Nogosek, Stein & Moore, P.A., St. Paul, MN, for respondent Anchor Bank, N.A.

Christina M. Snow, Michael R. Sauer, Wilford, Geske & Cook, P.A., Woodbury, MN, for respondent Emigrant Mortgage Company, Inc.

Considered and decided by SMITH, Presiding Judge; JOHNSON, Judge; and RODENBERG, Judge.

## OPINION

JOHNSON, Judge.

In 2004, Margaret Hunter borrowed money from Anchor Bank, N.A., to purchase a home for her adult son. The loan was secured by a mortgage on the son's home and on Hunter's home. Anchor Bank assigned the loan and mortgage to

Emigrant Mortgage Company, Inc. In 2011, after the loan went into default, Emigrant Mortgage conducted a foreclosure by advertisement pursuant to section 580.05 of the Minnesota Statutes. But the homes encumbered by the mortgage were sold together, contrary to section 580.08, which requires that separate mortgaged parcels be sold separately at a foreclosure sale.

In 2012, Hunter commenced this action against Anchor Bank and Emigrant Mortgage by a multi-count complaint. Hunter sought, among other things, a judgment setting aside the foreclosure sale because the two separate properties were sold together in one foreclosure sale. Hunter later moved to amend the complaint to plead additional claims. The district court entered summary judgment in favor of Anchor Bank and Emigrant Mortgage and denied Hunter's motion to amend the complaint.

We conclude that the district court erred by granting summary judgment to Emigrant Mortgage with respect to Hunter's claim to set aside the foreclosure sale because the foreclosure-by-advertisement statutes require strict compliance such that a non-compliant foreclosure sale is void. We also conclude that the district court did not err by granting summary judgment to Anchor Bank and Emigrant Mortgage with respect to four other claims alleged in the complaint. We further conclude that the district court did not err by denying Hunter's motion to amend the complaint to allege an additional claim. Therefore, we affirm in part, reverse in part, and remand for further proceedings on Hunter's claim to set aside the foreclosure sale.

## FACTS

In February 2004, Hunter and Anchor Bank entered into a loan agreement by which Anchor Bank lent Hunter $265,000, which she used to purchase a home for her son in the city of Newport, in Washington County. As security for the note, Hunter executed and delivered to Anchor Bank a mortgage encumbering the son's home and her own home, which is located in the city of Inver Grove Heights, in Dakota County. Anchor Bank promptly assigned its interest in the note and mortgage to Emigrant Mortgage. The mortgage and the assignment were filed with the Washington County Recorder's Office and the Dakota County Recorder's Office.

Hunter later defaulted on the loan by failing to make payments. In July 2011, Emigrant Mortgage commenced a foreclosure by advertisement. Notice of a foreclosure sale in Washington County was published for six consecutive weeks. In February 2012, Emigrant Mortgage purchased both properties together at the foreclosure sale.

In August 2012, Hunter commenced this action against Anchor Bank and Emigrant Mortgage. In her complaint, she alleged six claims: (1) fraud and misrepresentation, (2) negligent misrepresentation, (3) promissory estoppel, (4) mutual mistake, (5) defective foreclosure sale, and (6) financial exploitation of a vulnerable adult. In November 2012, Hunter moved to amend her complaint to both add and remove claims. She sought to allege the following claims in the proposed amended complaint: (1) fraud and misrepresentation, (2) negligent misrepresentation, (3) promissory/equitable estoppel, (4) defective foreclosure sale, (5) reformation of mortgage, and (6) violations of the federal Truth in Lending Act (TILA).

In August 2012, Emigrant Mortgage moved to dismiss Hunter's complaint for failure to state a claim on which relief can be granted. *See* Minn. R. Civ. P. 12.02(e). In November 2012, Anchor Bank moved

for judgment on the pleadings or, alternatively, for summary judgment. *See* Minn. R. Civ. P. 12.03, 56.02. The district court converted both of the respondents' motions into motions for summary judgment.

In January 2013, the district court granted the respondents' motions and entered summary judgment in favor of Anchor Bank and Emigrant Mortgage on all claims pleaded in Hunter's complaint. The district court also denied Hunter's motion to amend the complaint. Hunter appeals.

### ISSUES

I. Did the district court err by granting Emigrant Mortgage's motion for summary judgment with respect to Hunter's claim that the foreclosure sale is void?

II. Did the district court err by granting respondents' motions for summary judgment with respect to counts 1, 2, 3, and 4 of Hunter's complaint?

III. Did the district court err by denying Hunter's motion to amend the complaint?

### ANALYSIS

### I.

Hunter first argues that the district court erred by granting Emigrant Mortgage's motion for summary judgment with respect to the fifth claim pleaded in the complaint, in which she sought to set aside the foreclosure sale.

The statute on which Hunter's argument is based provides as follows:

If the mortgaged premises consist of separate and distinct farms or tracts, they shall be sold separately, and no more farms or tracts shall be sold than are necessary to satisfy the amount due on such mortgage at the date of notice

of such sale, with interest, taxes paid, and costs of sale.

Minn.Stat. § 580.08 (2012). It is undisputed that the foreclosure sale did not comply with this statute; the two mortgaged properties were sold together at the foreclosure sale, not in two separate sales. In dispute is the consequence of the non-compliance. Hunter argued to the district court that the non-compliant foreclosure sale is void. Emigrant Mortgage argued to the district court that the foreclosure sale is merely voidable and that Hunter cannot establish the facts necessary to void the sale. The district court agreed with Emigrant Mortgage, reasoning that the sale was voidable and that Hunter had failed to submit evidence of prejudice or good cause to void the sale. On appeal, the parties reiterate the arguments they made to the district court, which present questions of law.

This court applies a *de novo* standard of review to a district court's grant of a motion for summary judgment and determines whether genuine issues of material fact exist and whether the district court erred in applying the law. *RAM Mut. Ins. Co. v. Rohde,* 820 N.W.2d 1, 6 (Minn. 2012). We also apply a *de novo* standard of review to a district court's interpretation of a statute. *Premier Bank v. Becker Dev., LLC,* 785 N.W.2d 753, 758 (Minn. 2010).

### A.

Our interpretation of section 580.08 is guided by the supreme court's recent interpretation of another section of chapter 580 of the Minnesota Statutes. Earlier this year, the supreme court interpreted section 580.02 of the foreclosure-by-advertisement statutes in *Ruiz v. 1st Fid. Loan Servicing, LLC,* 829 N.W.2d 53 (Minn. 2013). In doing so, the supreme court

described its approach to interpreting the foreclosure-by-advertisement statutes:

> We construe the words and phrases in section 580.02(3) according to their plain and ordinary meaning, with the exception of technical words and phrases, which we construe according to their special meaning. In addition, if the words of a law in their application to an existing situation are free from all ambiguity, we will not disregard the letter of the law in order to pursue its spirit. A statute that is not reasonably susceptible to more than one interpretation is not ambiguous.

*Id.* at 57 (citations omitted).

The dispute in *Ruiz* concerned a mortgage holder's failure to record an assignment of a mortgage before commencing a foreclosure by advertisement, as required by section 580.02. *Id.* at 56. The question presented by the appeal was "whether a foreclosure by advertisement initiated by appellant . . . resulted in a valid foreclosure despite [appellant's] failure to comply with certain statutory requirements." *Id.* at 54. The court of appeals had held that the foreclosure-by-advertisement statutes "require strict compliance and that a foreclosing party's failure to strictly comply renders the foreclosure void." *Id.* (citing *Ruiz v. 1st Fid. Loan Servicing, LLC*, No. A11–1081, 2012 WL 762313 (Minn.App. Mar. 12, 2012), *aff'd*, 829 N.W.2d 53 (Minn. 2013)). In the supreme court, the mortgagee argued that "a foreclosing party need only substantially comply with the statutory requirements for foreclosure by advertisement" and that a substantially compliant foreclosure sale is voidable only if the mortgagor can establish prejudice. *Id.* at 56–57.

The supreme court analyzed the parties' arguments primarily by focusing on the plain language of the statute. *Id.* at 57–58. The court parsed the statute carefully by reviewing the definitions of the words used in section 580.02. *Id.* at 57. This mode of interpretation led the court to hold that section 580.02 "unambiguously mandates strict compliance." *Id.* at 58. The supreme court proceeded to determine that the mortgagor had not strictly complied with section 580.02 and that, as a consequence, the foreclosure sale was void. *Id.* at 58–59.

Four years earlier, in *Jackson v. Mortgage Elec. Registration Sys., Inc.*, 770 N.W.2d 487 (Minn.2009), the supreme court explained the history and purpose of the foreclosure-by-advertisement statutes and emphasized the need for strict compliance with the terms of the statutes:

> The foreclosure by advertisement statutes at issue were originally enacted in 1849, the year when Minnesota became a territory. The requirements of the statutes have changed very little over the past 160 years. Foreclosure by advertisement was developed as a non-judicial form of foreclosure designed "to avoid the delay and expense of judicial proceedings." *Because foreclosure by advertisement is a purely statutory creation, the statutes are strictly construed.* We require a foreclosing party to "show exact compliance" with the terms of the statutes. *If the foreclosing party fails to strictly comply with the statutory requirements, the foreclosure proceeding is void.*

*Id.* at 494 (emphasis added) (citations, footnote, and quotation marks omitted). The supreme court in *Jackson* was concerned with section 580.02 but used a plural noun when discussing the foreclosure-by-advertisement *statutes. See id.* The *Jackson* opinion suggests that strict compliance is required for all statutes within chapter 580, not just for section 580.02.

In this case, the relevant statutory language unambiguously states that "mort-

gaged premises consist[ing] of separate and distinct farms or tracts ... shall be sold separately." Minn.Stat. § 580.08. The parties do not disagree about the meaning of the words "separate," "distinct," "tracts," or "separately." They disagree only as to whether the word "shall" causes a foreclosure sale that does not comply with section 580.08 to be void or merely voidable. The supreme court's recent opinions on chapter 580 indicate that a failure to strictly comply with any statute in chapter 580 causes a foreclosure to be void. *See Ruiz,* 829 N.W.2d at 57–59; *Jackson,* 770 N.W.2d at 493–501.

### B.

Emigrant Mortgage contends that *Ruiz* and *Jackson* do not govern this case. Emigrant Mortgage further contends that the caselaw interpreting section 580.08 does not insist on strict compliance.

Emigrant Mortgage's argument finds support in the supreme court's early caselaw. In *Willard v. Finnegan,* 42 Minn. 476, 44 N.W. 985 (1890), the supreme court interpreted an earlier version of section 580.08 in a case in which separate parcels of mortgaged property were sold together, rather than separately, at a foreclosure sale. *Id.* at 478–79, 44 N.W. at 985–86 (citing Minn. Gen.Stat. ch. 81, § 9 (1878)). The supreme court framed the question as "[w]hether a sale contrary to the statute renders it absolutely void, or only voidable." *Id.* at 478, 44 N.W. at 985. The supreme court resolved the question as follows:

> Viewed from a practical stand-point, we think the better rule is that a sale contrary to the statute is merely voidable when fraud, prejudice, or other good cause for vacating it is shown.... The consequences of a contrary rule would be disastrous. A great many titles would be open to question and doubt.

> The inquiry whether the land sold consisted in fact of separate and distinct tracts would often be attended with great difficulty. The question would be one of fact, dependent upon evidence *dehors* the record, and perhaps often doubtful or conflicting. The validity of titles ought not to be made dependent upon such extraneous facts.

*Id.* at 479, 44 N.W. at 986. The supreme court relied on a prior opinion concerning sales on execution and reasoned that foreclosure sales should be treated in the same manner. *Id.* at 478, 44 N.W. at 985–86 (citing *Lamberton v. Merchants' Nat'l Bank of Winona,* 24 Minn. 281, 282 (1877)).

The supreme court applied *Willard* two years later in *Clark v. Kraker,* 51 Minn. 444, 53 N.W. 706 (1892). The parties in *Clark* agreed that "the law of this state, as settled by judicial construction," is that a single foreclosure sale of multiple parcels of mortgaged land is "not void, but only voidable, for good cause shown." *Id.* at 447–48, 53 N.W. at 707. Eleven years later, in *Phelps v. Western Realty Co.,* 89 Minn. 319, 94 N.W. 1085 (1903), the supreme court reiterated the rule of law that originated with *Willard:* "A sale, under a power in a mortgage, in gross, as one parcel, of several separate and distinct tracts of land, is not void, but voidable only for good cause shown, and for fraud or prejudice resulting to the mortgagor or owner of the equity of redemption." *Id.* at 324, 94 N.W. at 1087 (citing *Willard* and *Clark* ). The supreme court applied the principle of the *Willard–Clark–Phelps* line of cases to foreclosure sales involving multiple parcels in only two subsequent opinions, both of which were issued in the 1920s. *See Mulroy v. Sioux Falls Trust & Sav. Bank,* 165 Minn. 295, 297, 206 N.W. 461, 462 (1925); *Northland Pine Co. v. Northern Insulating Co.,* 145 Minn. 395, 398, 177 N.W. 635, 636 (1920); *cf. Gerdin*

*v. Princeton State Bank,* 384 N.W.2d 868, 872 (Minn.1986) (citing *Clark* in discussion of sections 580.15 and 580.19).

For a period of time, the *Willard–Clark–Phelps* line of cases co-existed with a body of caselaw providing that strict compliance is required in the context of foreclosure by advertisement. The supreme court articulated this interpretation of the foreclosure-by-advertisement statutes for the first time in *Moore v. Carlson,* 112 Minn. 433, 128 N.W. 578 (1910):

> Foreclosure by advertisement is purely a statutory creation. One who avails himself of its provisions must show an exact and literal compliance with its terms; otherwise he is bound to profess without authority of law. If what he does failed to comply with the requirements of the statute, it is void.

*Id.* at 434, 128 N.W. at 579. Two years later, the supreme court reiterated its holding in *Moore:* "There is no doubt that foreclosure by advertisement is a statutory remedy, and that all the essential requisites must be strictly followed, or the proceedings will be held void." *Sander v. Stenger,* 117 Minn. 424, 428, 136 N.W. 4, 5 (1912). The supreme court cited *Moore* as support for requiring strict compliance in its two most recent opinions concerning chapter 580. *See Ruiz,* 829 N.W.2d at 56; *Jackson,* 770 N.W.2d at 492.

### C.

To resolve the parties' arguments concerning the proper interpretation of section 580.08, we rely on the supreme court's most recent caselaw concerning chapter 580. In those opinions, the supreme court required strict compliance with another section of chapter 580. *See Ruiz,* 829 N.W.2d at 56–59; *Jackson,* 770 N.W.2d at 492. In its most recent opinion, the supreme court held that non-compliance with a statutorily required foreclosure-by-ad-vertisement procedure causes a foreclosure to be void. *See Ruiz,* 829 N.W.2d at 59. In *Ruiz,* the supreme court cited *Moore* in connection with the argument that prevailed and cited *Willard* in connection with the argument that did not prevail. *Compare id.* at 56 (citing *Moore,* 112 Minn. at 434, 128 N.W. at 579), *with id.* at 57 (citing *Willard,* 42 Minn. at 478–79, 44 N.W. at 985–86). Thus, the supreme court implicitly rejected the *Willard–Clark–Phelps* line of cases in favor of *Moore.*

Emigrant Mortgage contends that *Jackson* and *Ruiz* do not discuss section 580.08 and, therefore, do not apply. But this contention reflects an unduly narrow reading of the supreme court's recent caselaw. Emigrant Mortgage's argument essentially would require this court to wait until the supreme court adopts a strict-compliance approach on a section-by-section basis, and it would require this court to apply contrary caselaw until such time as the supreme court decides a case that raises the precise issue that is raised in this case. In the present circumstances, the supreme court's caselaw is broad enough and clear enough to allow us to discern the proper interpretation of section 580.08. For example, this court recently relied on *Jackson* to interpret another section of chapter 580 to require strict compliance. *See Embree v. U.S. Bank N.A.,* 828 N.W.2d 141, 144 n. 2 (Minn.App.2013) (interpreting section 580.05). Furthermore, the supreme court's reasoning in the *Willard–Clark–Phelps* line of cases appears to be out of step with the supreme court's current methods of statutory interpretation, which emphasize the plain language of an unambiguous statute. *See Ruiz,* 829 N.W.2d at 57. The language of this statute unambiguously states that separate mortgaged properties "shall be sold separately" and that "no more [properties] shall be sold than are necessary to satisfy the amount due." Minn.Stat. § 580.08.

■ For the reasons stated above, we conclude that section 580.08 requires strict compliance. If separate parcels of mortgaged property are not sold separately at a foreclosure sale, the foreclosure sale is void, without any need for the mortgagor to prove additional facts, such as fraud, prejudice, or good cause. In this case, Emigrant Mortgage sold the two separate mortgaged properties in one foreclosure sale, in violation of section 580.08. Accordingly, the foreclosure sale is void. Thus, the district court erred by granting Emigrant Mortgage's motion for summary judgment on Hunter's fifth claim.

## II.

■ Hunter next argues that the district court erred by granting Anchor Bank's and Emigrant Mortgage's motions for summary judgment with respect to the first four claims pleaded in her complaint: fraud, negligent misrepresentation, promissory estoppel, and mutual mistake.

The district court granted respondents' summary judgment motions with respect to counts 1 through 4 on two independent grounds. First, the district court concluded that the claims are barred by the six-year statute of limitations. *See* Minn.Stat. § 541.05. Second, the district court concluded that the claims are barred by the statute of frauds. *See id.,* § 513.04.

■ In her principal brief, Hunter challenged the entry of summary judgment on counts 1 through 4 only by attacking the district court's first reason for granting the motions, that the claims are barred by the statute of limitations. In her principal brief, Hunter did not challenge the entry of summary judgment on counts 1 through 4 with respect to the district court's second reason, that the claims are barred by the statute of frauds. Hunter belatedly challenged the district court's second reason for granting the summary judgment mo-

tions in her reply brief. But an argument for reversal that is not raised in an appellant's principal brief is forfeited. *See State v. Yang,* 774 N.W.2d 539, 558 (Minn.2009); *Berg v. State,* 557 N.W.2d 593, 596 (Minn. App.1996); *McIntire v. State,* 458 N.W.2d 714, 717 n. 2 (Minn.App.1990), *review denied* (Minn. Sept. 28, 1990); *State by Humphrey v. Ri–Mel, Inc.,* 417 N.W.2d 102, 110 (Minn.App.1987), *review denied* (Minn. Feb. 17, 1988); *see also Balder v. Haley,* 399 N.W.2d 77, 80 (Minn.1987). Thus, the district court's second reason for entering summary judgment on counts 1 through 4 of the complaint, the statute of frauds, has not been properly challenged on appeal. In this case, the statute of frauds is an independent and sufficient basis for the district court's entry of summary judgment with respect to counts 1 through 4 of the complaint.

Thus, we conclude that Hunter has forfeited her argument that the district court erred by granting respondents' motions for summary judgment with respect to counts 1, 2, 3, and 4 of the complaint.

## III.

■ Hunter last argues that the district court erred by denying her motion to amend the complaint with respect to her proposed claim alleging a violation of the federal Truth in Lending Act (TILA). Hunter does not challenge the district court's denial of her motion to amend with respect to two other claims that she sought to insert into the case.

■ A party may amend a pleading after a responsive pleading has been served "only by leave of court or by written consent of the adverse party." Minn. R. Civ. P. 15.01. Leave to amend "should be freely granted, except where to do so would result in prejudice to the other party." *Fabio v. Bellomo,* 504 N.W.2d 758,

761 (Minn.1993). Even in the absence of prejudice, a district court may deny a motion to amend a pleading if the amendment "would serve no useful purpose," *Bridgewater Tel. Co. v. City of Monticello*, 765 N.W.2d 905, 915 (Minn.App.2009), such as if an amended claim is not viable or would not withstand a motion for summary judgment, *Voicestream Minneapolis, Inc. v. RPC Properties, Inc.*, 743 N.W.2d 267, 272 (Minn.2008). This court applies an abuse-of-discretion standard of review to a district court's denial of a motion to amend pleadings. *Fabio*, 504 N.W.2d at 761.

In this case, the district court denied Hunter's motion to amend the complaint with respect to the proposed TILA claim on the ground that it would not survive summary judgment and, thus, would serve no useful purpose. Hunter's claim is based on a statute that provides, in relevant part:

> For each consumer credit transaction other than under an open end credit plan, the creditor shall disclose each of the following items, to the extent applicable:
>
> . . . .
>
> (9) Where the credit is secured, a statement that a security interest has been taken in (A) the property which is purchased as part of the credit transaction, or (B) property not purchased as part of the credit transaction identified by item or type.

15 U.S.C. § 1638(a)(9) (2012). Hunter seeks to prove that Anchor Bank violated the statute because its TILA disclosure identified only the Newport property as security.

The district court concluded that Hunter's TILA claim would not survive a motion for summary judgment because the claim is barred by the applicable one-year statute of limitations. *See id.* § 1640(e). Hunter contends that her claim is not time-barred because she seeks to allege the claim as a recoupment claim. She invokes a statutory exception providing that the one-year statute of limitations "does not bar a person from asserting a violation of this subchapter in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation *as a matter of defense by recoupment* or set-off in such action, except as otherwise provided by State law." *Id.* (emphasis added).

Recoupment may be alleged as an affirmative defense in response to a mortgage foreclosure action in which the mortgage holder seeks damages. *See Molde v. CitiMortgage, Inc.*, 781 N.W.2d 36, 44 (Minn.App.2010). But Anchor Bank and Emigrant Mortgage did not seek an award of damages against Hunter in this action because they elected to proceed with a foreclosure-by-advertisement proceeding. "A deficiency judgment is not allowed if a mortgage is foreclosed by advertisement under chapter 580." Minn.Stat. § 582.30, subd. 2. Because Anchor Bank and Emigrant Mortgage did not seek damages, there could be nothing for Hunter to recoup. The district court properly determined that Hunter's proposed TILA claim is not in the nature of recoupment, which means that it would not satisfy the exception to the one-year statute of limitations. Accordingly, the district court properly determined that Hunter's proposed TILA claim would not survive summary judgment.

Thus, the district court did not err by denying Hunter's motion to amend the complaint with respect to Hunter's proposed TILA claim.

## DECISION

The district court erred by granting summary judgment to Emigrant Mortgage

on Hunter's claim to set aside the foreclosure sale. Section 580.08 requires strict compliance, and the foreclosure sale does not strictly comply with the statute. As a consequence, the foreclosure sale is void.

The district court did not err by granting summary judgment to Anchor Bank and Emigrant Mortgage on Hunter's claims of fraud, negligent misrepresentation, promissory estoppel, and mutual mistake.

The district court did not err by denying Hunter's motion to amend the complaint to allege a TILA claim against Anchor Bank.

We affirm in part, reverse in part, and remand for further proceedings on Hunter's claim against Emigrant Mortgage to set aside the foreclosure sale.

**Affirmed in part, reversed in part, and remanded.**

SMITH, Judge (concurring specially).

Although I concur with the majority's conclusion that the foreclosure sale does not comply with the requirements of section 580.08, I write separately because I believe that the sale should be voidable rather than void. The majority acknowledges a line of cases stating that foreclosure sales that fail to comply with statutory requirements for foreclosure sales renders the sales voidable rather than void, *see, e.g., Willard,* 42 Minn. at 478, 44 N.W. at 985; *Clark,* 51 Minn. at 447–48, 53 N.W. at 707; *Phelps,* 89 Minn. at 324, 94 N.W. at 1087, but it ultimately concludes that more recent interpretations of chapter 580 statutes require that noncompliant foreclosure sales are "void absolutely," *see, e.g., Ruiz,* 829 N.W.2d at 59. Although *Ruiz* interprets a different section of chapter 580 than it at issue here, the majority appears to conclude that because the supreme court has interpreted multiple sections of chapter 580 to

require strict compliance, *see, e.g., Embree,* 828 N.W.2d at 144 n. 2; *Jackson,* 770 N.W.2d at 494, that a similarly uniform approach should be taken to the remedy, making all noncompliant foreclosure sales void rather than merely voidable.

I believe this method neglects primary goal of statutory interpretation and, as a result, it will raise serious practical difficulties for title examiners in Minnesota. The legislature has directed that our primary purpose when interpreting a statute is "to ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (2012). Although "we will not disregard a statute's clear language to pursue the spirit of the law," *Lee v. Fresenius Med. Care, Inc.,* 741 N.W.2d 117, 123 (Minn.2007), the majority's basis for holding that the sale was void rather than voidable arises from its selections from caselaw interpreting other chapter 580 sections, not from the text of the statutes.

Here, a close examination of chapter 580 and of the relevant cases reveals that the purpose of the legislature is best served by applying differing remedies to differing sections. In *Ruiz,* the supreme court held that a foreclosure sale was void because it failed to strictly comply with a requirement in section 580.02 that "all assignments of a mortgage be recorded before a party is entitled to make a foreclosure by advertisement." 829 N.W.2d at 59 (citing Minn.Stat. § 580.02(3)). The "manifest purpose" of this requirement is to protect the integrity of the recorded records of titles, *Ofor v. Ocwen Loan Servicing, LLC,* 649 F.3d 808, 813 (8th Cir.2011) (interpreting Minn.Stat. § 580.02(3)), so that "a mortgagor has notice and an opportunity to redeem." *Beecroft v. Deutsche Bank Nat'l Trust Co.,* 798 N.W.2d 78, 83 (Minn. App.2011). Accordingly, failure to comply with the recording requirement at issue in

*Ruiz* rendered the sale void, rather than voidable, because completely voiding the sale was necessary to protect the integrity of the title.

Applying the same remedy to violations of section 580.08, however, has the opposite effect. Rather than protecting the integrity of titles, it may render them impossible to determine, as title examiners could no longer rely on title records to provide necessary information. Because the necessary additional records might not be accessible, title examiners may have difficulty certifying that particular titles were free of void transactions. The supreme court recognized this possibility, stating:

> The consequences of [a rule that renders void all sales that violate the separate-tracts requirement] would be disastrous. A great many titles would be open to question and doubt. The inquiry whether the land sold consisted in fact of separate and distinct tracts would often be attended with great difficulty. The question would be one of fact, dependent upon evidence dehors the record, and perhaps often doubtful or conflicting. The validity of titles ought not be made dependent upon such extraneous facts.

*Willard,* 42 Minn. at 479, 44 N.W. at 986.

Because I believe that the supreme court's practical analysis in *Willard* is not, in fact, "out of step with the supreme court's current methods of statutory interpretation," I would hold that the joint sale of Hunter's and her son's homes was not void, but rather that it was voidable.